Good morning, Your Honors. May it please the Court. I'm Tara Moxley, here on behalf of the appellants. The District Court's decision on the party's cross-motions for summary judgment rests on unsustainable contradictions that turn the deference afforded to claims administrators on its head. The District Court found that the summary plan description thoroughly explained the long-term disability benefits at issue. The District Court also found that MetLife's interpretation of the offset provision was reasonable. Further, it's undisputed that MetLife, when it denied Mr. Thomason's administrative appeal, that MetLife was relying on an opinion from a court of law that held that MetLife's interpretation of the offset provision was legally correct. Despite these findings and this undisputed evidence, the District Court nonetheless determined that MetLife had abused its discretion in applying an offset to the monthly long-term disability benefits paid to Mr. Thomason. This determination was incorrect, and the appellants asked the Court to reverse and render on Mr. Thomason's benefit enforcement claim for three reasons. First, the phrase elect to receive in the offset provision is not ambiguous, and MetLife's interpretation of that provision is legally correct. How could he have received the money if it was converted into another intangible retirement benefit? Your Honor, he elected to receive it under the terms of the Verizon Pension Plan, which has its own summary plan description, which speaks in terms of making an election, and there are repeated references in both the summary plan description of the... Are you arguing that he doesn't have to actually receive it? He only needs to elect to receive it? Or is your argument that he received it? It's both, Your Honor. He elected to receive it under the terms of the Verizon Pension Plan, and he also received it in terms of... He now has control over it, and Verizon and MetLife have control over it. Correct, Your Honor. Directly... And the IRS regulations wouldn't deem that he received it, would they? For purposes of income tax, no, Your Honor, but we don't think that that standard is... That question is... Well, but the regulations are referenced in part of this summary, aren't they? The IRS regulations are not referenced in the summary plan description. The steps that Mr. Thomason tries to go through to get this court to get to those IRS rules is laid out in our reply brief, and it, I think, is a five-step process, and it's far too tenuous a logical exercise to get from the summary plan description to IRS regulations in a publication that is not mentioned in the summary plan description, and which answers a different question. I mean, those IRS regulations and the special tax notice that MetLife provides to participants like Mr. Thomason advises them what the tax implications are when they elect to receive their pension plans. That's a... Well... Go ahead. But the IRS determines that this rollover is a circumstance where you don't receive it. For purposes of income tax, yes, Your Honor, but for purposes of the offset provision in the long-term disability plan, he has elected to receive it, and I think... Who says? I'm sorry, Your Honor? Who determined that? Well, MetLife determined it as the claims administrator that has the discretion to interpret the summary plan description, or the summary, the plan, and has discretion to determine what those words mean, and when it made that decision, it was relying on a court of law that had already told it that the way it interpreted the summary plan description was correct. Your argument is that if receive, elect to receive is ambiguous, that we defer to the administrator, that we don't use the doctrine that says it's construed against the drafter. Is that correct? That's correct, Your Honor. Whether ambiguous or not, it certainly was not an unreasonable way to construe the requirement. That's correct, Your Honor, and the district court explicitly found that, and as this court and the Supreme Court have repeatedly held, the claims administrator's decision just has to fall on a continuum of reasonableness, even if it's the low end. It doesn't have to be the most persuasive interpretation of the plan at issue, it just has to be reasonable, and that's something the district court acknowledged, but went on to find that it was an abusive discretion nonetheless. I think that when you look at the discretion that the administrator has, and the cases that talk about the application of that canon of construction, contra preferentum, it's not applicable here because the administrator is vested with the discretion that it has, and there are several Fifth Circuit cases on point that explicitly say that, and we've cited them both in our principle brief and the reply, and the non-application of that canon of construction still holds true even when we're looking at a summary plan description like we have here. The one thing that was not addressed in Mr. Thomason's brief is any sort of acknowledgement or explanation for how this court needs to look at the documents at issue, because we have a master plan document that provides master terms for, I think, over a dozen component benefits, medical, dental, life insurance, and long-term disability benefits like we have here. Counselor, how do you explain COLA, where we said discretion to resolve ambiguities in the plan does not extend to the plan summary? I think that the facts of COLA distinguish it from this case, and in that case, it was a curious, the facts were curious, as the opinion pointed out, in that the summary plan description and the obviously the ERISA regulations require that the summary plan description be in a language that can be understood by the average plan participant, and so I think that distinguishes, that's distinguishable from our case where you don't have two documents that say the same thing. You have documents that have to be read in tandem. The only place that you find the be calculated, what sort of offsets are going to be, are in the summary plan description itself. There cannot be a conflict between the summary plan description and the document entitled the plan, because the two documents have to be read in tandem together. They are incorporated together, and they together constitute the plan, and that's not an unusual way for Raya v. Allen Ritchie, which is a 2015 case out of the Eastern District of Texas, which collects cases from three different circuits, including this circuit, as well as cases from district courts in Connecticut, Michigan, Utah, and Florida, that specifically say it's not unusual for the summary plan description to constitute the plan, or to provide the operative language for a particular component benefit when you've got a welfare benefit plan that has many different benefits. Now, Kohler, you say that Kohler just has unique facts, and so we can put it to one side, but didn't Rohrer also cite Kohler for the same proposition? Well, yes it did. Then why can't we refer, if you say Kohler's a unicorn case, but Rohrer said the same thing that Kohler said, and cited Kohler for that case, so we've got two unicorns now? I don't know that I'd go so far to call it a unicorn, but I think that Kohler and Rohrer and Hanson and other cases that Thomason relies on, they either have what Kohler had, where you have two separate, distinct documents that have the exact same language. That was the situation in Kohler. Or in Rohrer, you've got two documents that conflict with each other, or that have internal conflicts, and we just don't have that here. We're talking about one provision that only appears in the summary plan description, because that's the only place the operative language for this particular benefit appears. And so the cases that deal with documents where the plan and the summary plan description are separate and distinct documents, and there's a conflict between the two, I think are distinguishable here. So it seems like under your analysis, it would behoove every plan administrator to just do a summary, and then you get all this, I mean to just do the plan where you get all the description. To just do the plan, I'm not sure I understand. Well, you said if there's a summary plan description, and then there's the plan, and then you've got a conflict between the two, but if you only do one, you could never have any conflict. Certainly, you could never have any conflict, and I think that that is in line with the easy to understand language, so the participants know what their benefits are. And if all of the operative language only appears in one document, well, then that's going to certainly reduce the chances that there's going to be conflicts. But the argument... But in the purpose of the summary plan description to kind of put in layman's terms what may otherwise appear in the plan. Yes, Your Honor, and the summary plan description here does, but that was one of the problems in Kohler, in that the plan, the master plan document, which is typically written in language of lawyers, I think is the phrase that the Kohler opinion used, that same language of lawyers was problematically used in the summary plan description, which was just a verbatim copy of the plan. Here we don't have that. We've got two documents that have to be read in conjunction with each other, and the argument that Thomason brings forth would essentially divest claims administrators of any ability to exercise discretion when their documents are set up like ours are, which is not an uncommon proposition if you look at the cases that are collected in the Rhea case that we cited, including a 2012 case out of this court, Dudley. Could you please respond to this? The red brief says, the clause elect to receive must mean something different than provided from the Verizon pension plan. If benefits provided from the Verizon pension plan were always offset from long-term disability benefits, then the clause, if you elect to receive them, would be rendered meaningless. How is the clause not rendered meaningless under your interpretation? Because, Your Honor, in our reply brief, we laid out what the pension plan says as far as when you can elect to receive your benefits, your pension plan benefits. There are certain places in time you can do that. And until you make an election, you haven't received them. But one of the... I'm getting well on time, so I just want to quickly answer this and then switch to the A3 claim. Well, I think this is a really important thing. No, I agree, Your Honor. One of the policy considerations behind granting claims administrators deference, as the Supreme Court said in Congress, is that it promotes uniformity, predictability, and efficiency. Okay, I'm not asking a policy question. I'm asking, is a clause rendered meaningless under your client's interpretation? That's really important in deciding what's the right interpretation. Absolutely not, Your Honor. The provided from language in the introductory clause of the offset provision, it deals with a number of different bullet points. And the elect to receive language is not rendered meaningless because it tracks the language in the pension SPD, which is beneficial to the plan participants. Because a plan participant who is entitled to long-term disability benefits, as well as pension benefits, is going to be looking at both summary plan descriptions to see how that's going to shake out. And by tracking the language from the pension plan summary plan description in the offset provision in the long-term disability summary plan description, it alerts the participant to the fact that when you're making the election, which when you're receiving your pension plans, you're filling out a form that is entitled election form. It alerts the participant that when you're making this election, you are receiving benefits for purposes of the offset provision. Moving just very quickly to the A3 claim, the breach of fiduciary duty claim, we think that this court's opinion in Singletary, as well as Gerald's, make clear that you can't simply repackage a benefit enforcement claim as a breach of fiduciary duty claim. The relief that Thomason seeks under both claims are substantively identical. And this court in Singletary noted that it looks closely at the particular claim issue and that it's reluctant to transform or improvise or alter the causes of action. And the A3 claim is reserved for catch-all claims. And here, the benefit enforcement claim is clearly the proper claim. It's just one that Mr. Thomason cannot prevail on. Thank you. Why isn't the note in the Singletary case that A3 is a possibility for this claim, not to the contrary? It's pled. And so what will be an issue is you can only get one recovery. But you can plead alternative theories for the same recovery. And it doesn't appear that Singletary actually prohibits that, where it was indeed pled. As a pleading issue, I think that I would agree with that. And the district court here held the same as a pleading issue in denying our motion to dismiss. But now that we are at the motion for summary judgment stage, it's clear that the benefits that Thomason is seeking are benefits under the plan. And those are benefits that the remedy that is available to him is the enforcement remedy under A1B. We just don't think he can prevail on it. Why can't he have two possible ways, and one you think doesn't work, but the other one works? Well, Your Honor, it's not an election of remedies issue. The benefit enforcement claim is the claim that ERISA provides for participants to recover benefits under the plan. And that's clearly what Mr. Thomason is seeking to do. Are you asking us to create a circuit split with the Eighth Circuit then? Isn't it the Eighth Circuit? Am I correct on that? I believe it's the Eighth Circuit that Mr. Thomason... Well, would we create a circuit split? You would not, Your Honor. Because in the cases from the other circuit that Mr. Thomason cited in his response brief, those were cases where an A1B claim was not available because it was clear that the plan didn't provide the coverage... Well, that's what you're arguing here, that the A1B claim doesn't work. We're arguing that he can't prevail on the A1B claim, not that it doesn't apply to his claim. We're arguing that he can't prevail. In Singletary and an Eighth Circuit case, and I think there was also a Sixth Circuit case that he cited in his brief, the facts made clear that there wasn't available... that the plan just didn't cover the claimant issue. It was issues like in the Amara case where either there was an exclusion that applied or a dependent child had aged out of coverage, and it was clear that there was no way to recover under the plan. Not that he couldn't prevail on that claim, but just that the claim wasn't available at all. Here I think it's a differentiation between can he plausibly make out a claim for pleading purposes versus prevailing on the claim. So it's your position that we would not create a circuit split by ruling your way? Correct, Your Honor. Okay. And I would ask that the other side be given an additional two minutes since counsel has had more time up at the bench as well. Thank you. Your Honor. May it please the Court. I'm Jim Johnson representing the plaintiff, Joel Thomason, who is also the appellee. Now Mr. Thomason's benefit claim is primarily governed by a whole series of the Fifth Circuit cases that culminated in Kohler v. Aetna in 2012. Now the Kohler line of cases looks to the statute and regulations governing how summary plan descriptions are supposed to be prepared. And that analysis has only been made stronger by the Supreme Court's subsequent ruling in 2013 in the U.S. Airways case. So the U.S. Airways case held that, quote, a court properly takes into account a background of legal rules, the doctrines that typically govern a given situation when no agreement states otherwise, close quote. So the court went on to observe that, quote, ignoring those rules is likely to frustrate the party's intent and produce perverse consequences, close quote. So the Supreme Court essentially stated expressly what the Fifth Circuit line of cases held by implication, that the court properly takes account of the background legal rules governing, in this case, summary plan descriptions when faced with an issue of the interpretation of a summary plan description. So Kohler holding remains valid in summary, quote, ambiguous plan language should be given a meaning as close as possible to what is said in the plan summary, close quote, and to, open quote, plan summaries be interpreted in light of the applicable statutes and regulations, close quote. The court went on to say that the regulations require greater clarity and was present in that case. Now, unlike Kohler, this case involves a more direct connection to the background legal rules governing summary plan descriptions. As Ms. Moxley just stated, Kohler involved the same wording used both in the plan and the summary plan description. But here, the plan contains no wording that actually describes the benefits, no wording at all. Instead, it specifically states the benefits, quote, shall be determined in accordance with the applicable summary plan description, provided that to the extent required by applicable law, coverage and benefits under the plan shall be provided in excess of the coverage and benefits described in the summary plan description. Do you agree if this wasn't a summary plan description and we were talking about the plan that you would lose? No, because that's where I get into my... Would you lose on the main point? No, because when you use the rules of construction about the adjacent clauses, I think the only reasonable interpretation of the clause, if you elect to receive them, that's right after Verizon Pension Plan. Well, it would be a much harder case for you because there might be a discretion might apply. It might apply. So the Kohler decision is basically my fallback. That's the easy way to look at it. But I think there's really only one reasonable interpretation, and that is for the Verizon Pension Plan under U.S. Airways, you have to look at the background legal rules governing the Verizon Pension Plan. The Verizon Pension Plan is a 401A plan. It was created by the tax code. And the very same tax code creates this trustee-to-trustee transfer. You have to... If you're a 401A plan, you have to allow a direct rollover by, quote, direct trustee-to-trustee transfer, close quote, to an IRA. And so under U.S. Airways, the background legal rules governing the given situation, the given situation here being the Verizon Pension Plan, requires that you go to those IRS rules under which Mr. Thomasson will receive his benefits only when he withdraws from the IRA without rolling over into another plan. Well, they told me that's not referenced in the plan summary or the plan, these IRS regulations. So how are you getting there? Okay, it is referenced in the pension summary plan description. And it's specifically spelled out, not only the statutory citations, but the terms, direct trustee-to-trustee transfer, in the pension plan document. And Verizon Employee Benefit Committee is the plan administrator of both plans. Okay. And so basically, I believe what's changed since COVID is that the U.S. Airways decision compels consideration of the background legal rules. You can't decide what elect to receive benefits from a Verizon Pension Plan means without reference to the background legal rules governing receiving benefits from a 401A pension plan. Now, what may be the most compelling similarity between the facts of Kohler and the facts of this case is that the Kohler case turned upon the summary plan description's failure to state when out-of-network services must be authorized. So Aetna had argued that a pre-authorization requirement was stated in the summary plan description, but the court found that it wasn't there. The Fifth Circuit specifically stated that the summary plan description seemed to contemplate a request for authorization at some point, but, quote, it does not say when that request must occur, close quote. We have the same problem here in states. The LTD summary plan description does not state when receipt of Verizon Pension Plan benefits will occur. And so that's where we set the stage for the background legal rules because it's only the IRS rules that govern when those benefits are received. So the operative wording of the LTD summary plan description states, quote, your LTD plan benefit is reduced by benefits provided from these sources. And it's got the first bullet point. Pension benefits from a Verizon Pension Plan if you elect to receive them. And as Judge Elrod just pointed out, the clause, if you elect to receive them, must mean something different than benefits merely provided from the Verizon Pension Plan. And that's because otherwise it would be rendered meaningless. And under the Fifth Circuit's decision in Denari and a number of other cases, you cannot reasonably interpret language in an operative document like this such that provisions are rendered meaningless. And that's what MetLife has done. They've rendered meaningless this clause if you elect to receive them. And if you look at the other summary plan description, it's in the record, for a different group of Verizon employees that had a nearly identical offset section, but it did not have the clause, if you elect to receive them, close quote. It just had provided from the Verizon Pension Plan. So in that case, it's clear that if benefits are paid from the pension plan, it counts as an offset. This summary plan description creates an additional requirement. It's not just paid from the pension plan. The claimant has to do something else. The claimant has to elect to receive them. And that other summary plan description, like this one, is part of Plan 5A. And so the general rule under Anderson, again another long list of cases, is that the drafter uses different words to have a different meaning. If they're supposed to have the same meaning, you wouldn't use different words. Counsel, can we talk about that year 8 reclaim? Sure. Is your case a repackaged cause of action? Not only, Your Honor. Mr. Thomason did not choose to have heart problems and open heart surgery and a number of other complications. If this was merely a repackaged disability claim where one thing happens, his heart problem, and now he's trying to find two different forms of relief, namely he goes out on disability and he wants his benefits. And what Ms. Moxley is arguing is basically that if you, and I agree it would be a repackaged claim in the sense that if you're simply trying to get your benefits through a different legal argument, that would be a so-called repackaged claim. That's not what happened here. Are repackaged claims forbidden by our precedent? It kind of depends on what you mean by repackaged claims. If it was in fact a repackaged claim and it was just another means to get disability benefits, if we saw it that way, would this be inappropriate and what case says it's inappropriate then? Now that I'm not sure because... I know district courts say that, but have we ever said that? I'm not sure about that because that's a factual situation that we just don't have here, and so I didn't research that line of cases. Because what we do have here is that months after Mr. Thomason went out on disability, he was given a choice. He could leave his pension benefits in the pension plan and let them ride until age 65. The plan document clearly allows him. He's got an option of withdrawing them at the end of every month after he vested, and he vested way back when. So he was eligible to receive his pension plans at the end of any month from way back when all the way to age 65. The only reason he chose to withdraw them at that time is he read the summary plan description for the LTD. He read the pension SPD. He read the IRS publication 575. He even called the IRS, and he determined that he would not receive his pension benefits until he withdrew from his IRA. And so he made very clear on his election form. He actually stated, he quoted, or he referenced IRS publication 575, and he said this is a direct roller. And he had the money mailed directly to the financial institution, which by law is a trustee. So all that happened was that the money went from one trustee, Verizon's trustee, to the Fidelity, I forgot the name for it, Fidelity Management Trust, I believe is the name of the company that holds the IRA. And so had he known, had the summary plan description properly stated with clarity and completeness as the SPD rules require, had the SPD properly stated that a transfer, a rollover to an IRA would constitute receipt, and hence he would sacrifice your LTD benefits, he wouldn't have done it. He would have left the money in the pension plan. He would have gotten his full LTD benefit. And at age 65, when his LTD benefits stop by the terms of the plan, LTD goes to age 65, and then his pension plans would, his pension benefits would pick up from that point forward. And that, in fact, is his plan. He plans to leave him in the IRA until age 65. And when his LTD benefits are no longer being paid out on a monthly basis, he can start drawing on his pension benefits. That's the whole point of having two different benefit packages for this 30-plus-year employee. And so what's different here is the additional act of relying on the summary plan description to elect a rollover, a direct rollover. It's not just a matter of having a heart surgery. So it's not just the facts giving rise to a disability claim. It's a disability claim, and then months later, relying on the summary plan description to elect a direct rollover to an IRA. And so the equitable surcharge claim, having been specifically recognized as a viable claim by the Supreme Court in Cigna v. Amara, that also involved a situation in which there was an A1B benefit claim first. And only after the Supreme Court found that the A1B claim was not going to be successful, that opened the door to then looking at A3, the catch-all provision, as an alternative form of relief. And so that's the way we pleaded it. We pleaded it as an alternative form. We prevailed in the district court on both the A1B claim and the A3 claim. And so that just sets the stage for an election of remedies. And in this case, there's really no election required because it's the exact same dollars and the exact same ruling for future benefits, just different language. So in one case, it's called pay your benefits under A1B. Under A3, it's an equitable surcharge. But to be made whole, the equitable surcharge equals dollar for dollar, cent for cent, the amount of benefits withheld. In the future, A1B calls that a clarification of future benefits. Under A3, it's an injunction. So either way, you get to the same point as the court entered in the judgment. So the actual dollars and cents come out the same under either the benefit claim or the equitable surcharge claim. And so there's really no election of remedies required. It's the same number. So if you have further questions or if you want me to go back to the A1B claim. Counsel, I think we have your argument. Okay. Yeah, I have to apologize for basically doing a bit of a long review. With my briefs, that was longer than it probably needed to be. Sorry. Okay. Appreciate it. We appreciate the briefs of both parties in this case. Thank you. Thanks. Just a couple of brief points on rebuttal, Your Honors. With respect to the benefit enforcement claim, the reliance on the U.S. Airways case and the ability to look at these background legal rules I think is a bit of an overstep of what that case stands for. In that case, the court noted that when you're interpreting a contract here, a plan provision, you can look to other manifestations of the party's intent. And in that case, the court recognized that there was a contractual gap because the contract was silent on a particular issue. And so it looked to a state law concept of the common fund doctrine. But with respect to other manifestations of the party's intent here, our argument, as we put forth in the brief, is the other documents regulating the long-term disability benefits plan and the pension plan, those are what indicate the party's intent. And the record citations that we included in our original brief to the pension plan summary plan description, which speaks in terms of electing to receive your pension benefits, the election authorization form, which is how you actually select how you're going to receive them, the special tax notice that says that the payment you receive may be eligible for rollover and that there are two ways to receive your payment, those documents working together are what reflect the party's intent, the intent of the phrase elect to receive in the offset provision. And we think those should control and show that there's not any ambiguity in the provision, which necessarily means that MetLife did not abuse its discretion and that the district court's decision should be reversed and rendered on that issue. As to the A3 claim, Mr. Johnson concedes that it's the exact same dollars we're talking about here in the benefit enforcement claim versus the A3 claim. And you asked for a case in which this court has said that repackaging is forbidden. I think that the court last year in the Singletary case hinted at that. The Amara decision is not that old, and so we're still sort of working our way through the circuit courts to see how the limited new life that the Supreme Court breathed into the A3 relief, how that's going to play out. But this court in Singletary quoted the Eighth Circuit in stressing the difference between bringing a claim for benefits under the plan, which is the A1B claim, versus bringing a claim for equitable relief. And there, and I'll quote, and this is on page four, although the plaintiff's ultimate goal is to continue receiving disability benefits, section A1B authorizes a participant to bring an action to recover benefits under the terms of the plan. That's what Mr. Thomson is trying to do here. He's trying to recover benefits under the terms of the plan, as opposed to seeking to obtain benefits or seeking to obtain to reform the plan, which is what the plaintiffs in Amara were trying to do, or seeking to obtain a declaration that the plan is void in some way. And in Singletary, the A1B claim was not available because a particular exclusion applied that took the question outside of the terms of the plan completely. Alternatively, with respect to the A3 claim, as we stated in our briefs, we don't think that Mr. Thomson has shown the requisite, certainly, breach. Our position is, of course, that the summary plan description is not misleading. But we also don't think that there is sufficient evidence of causation or harm for the reasons we laid out in our brief that Mr. Thomson, at least there's an inference that Mr. Thomson was aware of what would happen when he made his selection, given that his counsel represented the plaintiff in the Phillips case, that the Dallas Court of Appeals decided dealing with this exact same plan language and where the Dallas Court of Appeals held differently than the district court did here and found that MetLife's interpretation of the plan was legally correct. If there are no further questions, I'll yield my last 15 seconds. Thank you, counsel. Thank you. The case is submitted.